IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**CYNTHIA RUCKDASHEL**,

    Plaintiff,

v.

**CAROLYN W. COLVIN**,
Acting Commissioner of the Social Security
Administration,

    Defendant.
_____

Civ. No. 6:13–cv–02065–MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Plaintiff Cynthia Ruckdashel brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    The issues before this Court are: (1) whether the administrative law judge (ALJ) erred in evaluating the opinion of plaintiff's treating physician; (2) whether the ALJ erred in evaluating plaintiff's testimony; and (3) whether the ALJ erred in evaluating lay witness testimony. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## PROCEDURAL AND FACTUAL BACKGROUND

    Plaintiff applied for DIB and SSI in November 2010, alleging disability since October 29, 2010. Tr. 213–19, 220–27. These claims were denied initially and upon reconsideration. Tr. 23.

1 – OPINION AND ORDER

Plaintiff timely requested a hearing before an ALJ, and appeared before the Honorable Mary Kay Rauenzahn on July 31, 2012. Tr. 23. ALJ Rauenzahn denied plaintiff's claims by a written decision dated September 27, 2012. Tr. 20–34. Plaintiff sought review from the Appeals Council, which was subsequently denied, thus rendering the ALJ's decision final. Tr. 1–6. Plaintiff now seeks judicial review.

Plaintiff, born on August 16, 1959, tr. 213, graduated from high school, attended three years of college, and worked as a clerk, lead cashier, and office manager, tr. 263. Plaintiff alleges disability due to: degenerative disc disease of the cervical spine and right shoulder; post-traumatic headaches; and chronic pain syndrome. Pl.'s Br. 2, ECF No. 13.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## DISCUSSION

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §

2 – OPINION AND ORDER

423(d)(1)(A). The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id.*

At step two, the ALJ found plaintiff suffered from the following severe impairments: cervical degenerative disc disease; headaches; chronic pain syndrome; and degenerative joint disease of the right shoulder. Tr. 25.

Between steps three and four, the ALJ found:

> [C]laimant has the [RFC] to perform light exertion work with lifting and carrying twenty pounds occasionally and ten pounds frequently, standing and walking six or more hours of an eight hour workday and sitting two hours of an eight hour workday. She can occasionally climb ramps and stairs and never climb ladders, ropes and scaffolds. She can occasionally crawl and reach overhead bilaterally. The claimant is to avoid concentrated exposure to cold and noise and have no exposure to hazards such as unprotected heights and dangerous machinery. She can occasionally [perform] handling and fingering bilaterally. The claimant can understand, remember, and carry out only simple instructions that can be learned in 30 days or less.

Tr. 28. At step four, the ALJ found that plaintiff was unable to perform any past relevant work. Tr. 32. At step five, the ALJ determined that plaintiff could work as a bakery worker (DOT § 524.687-022), dealer account representative (DOT § 241.367-038), and laminator (DOT § 569.686-046); each existing in significant numbers in the national economy. Tr. 32. The ALJ therefore concluded plaintiff was not disabled. Tr. 33.

Plaintiff argues that the ALJ erred by: (1) improperly rejecting the opinion of plaintiff's treating physician; (2) improperly rejecting plaintiff's testimony; and (3) improperly rejecting lay witness testimony.

## I. Dr. Bert's opinion

Plaintiff argues that the ALJ erred in improperly rejecting the opinion of her treating physician Jeffrey Bert, M.D. Pl.'s Br. 12–14, ECF No. 13. In response, defendant argues that the ALJ properly rejected Dr. Bert's opinion to the extent it differed from the RFC. Def.'s Br. 3–6, ECF No. 14.

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted). When evaluating conflicting medical opinions, an ALJ need not accept a brief, conclusory, or inadequately supported opinion. *Id.* (citation omitted); *see also* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Because Dr. Bert's opinion is contradicted by opinions from treating physician Alan Whitney, M.D., and non-examining physicians Sharon Eder, M.D., and Linda Jensen, M.D., tr. 31–32, 93–95, 119–21, 431–32, 483, it can only be rejected by providing specific and legitimate reasons that are supported by substantial evidence.

Plaintiff met with Dr. Bert on at least seven occasions between November 2009 and March 2011 to receive medical treatment for her neck and shoulder pain.[1] *See* tr. 446, 502–03, 451, 473, 489, 548, 636. In a treatment note dated December 21, 2010, Dr. Bert opined that "at her level of impairment . . . she is pretty much disabled." Tr. 489. In a request dated February 23, 2011, defendant asked Dr. Bert to clarify his earlier December statement in a medical source statement. Tr. 431. Dr. Bert completed that statement on March 4, 2011; opining that plaintiff had the RFC to: occasionally lift fifteen pounds and frequently lift ten pounds; walk or stand for four hours in an eight-hour day; and sit for four hours in an eight-hour day. Tr. 431. Dr. Bert indicated by checking a box that his opined limitations were based on "patient complaints" and "objective findings," tr. 431,[2] and that plaintiff's limitations would continue without surgery, tr. 432. In a treatment note dated April 20, 2011, Dr. Bert wrote: "[b]ased on her limitation of motion of her neck and pain behavior I think that it is reasonable to state that she cannot sustain work activity, including work at a computer." Tr. 491.

The ALJ, having reviewed Dr. Bert's treatment notes and medical source statement, partially rejected Dr. Bert's opinion because it lacked explanation and was based on plaintiff's subjective self-reporting. *See* tr. 30–31.

As to Dr. Bert's insufficient explanation, this Court is unable to identify *any* substantive narrative explanation for either his disability conclusion or his opined functional limitations. This Court notes initially that a disability determination is reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Although a treating physician's evaluation of a patient's ability to work may be "useful or suggestive of useful information," a treating physician

---

[1] Plaintiff received treatment from Dr. Bert for her neck and shoulder impairments, not for her headaches. *See* tr. 74.
[2] In explaining the basis for his opinion, Dr. Bert wrote three words that this Court is unable to read. *See* tr. 431.

5 – OPINION AND ORDER

"ordinarily does not consult a vocational expert or have the expertise of one." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). If Dr. Bert had provided an explanation for his opinion, then that opinion would be entitled to more weight. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). However, absent *any* narrative explanation, it was entirely reasonable for the ALJ to discredit this disability conclusion. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) ("The ALJ . . . permissibly rejected . . . check-off reports that did not contain any explanation of the bases of their conclusions." (citation omitted)).

Dr. Bert's insufficient narrative explanation also required the ALJ to evaluate inconsistencies between Dr. Bert's disability conclusions and his opined functional limitations. *Compare* tr. 489, 491, *with* tr. 431. The ALJ, as the individual responsible for resolving conflicts in medical testimony and resolving ambiguity, *see Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999), reasonably determined that Dr. Bert's opined functional limitations were "consistent with light work and more restrictive in terms of lifting and carrying than what the claimant testified she can perform," tr. 30. Thus, the ALJ reasonably concluded that Dr. Bert's medical source statement was inconsistent with his disability conclusions. *See Morgan*, 169 F.3d at 603 (internal inconsistencies in a doctor's opinions are a proper basis for finding a doctor's opinion unreliable).

As to plaintiff's subjective reporting, plaintiff does not dispute that Dr. Bert relied, at least in part, on this self-reporting. *E.g.*, tr. 491 ("Historically she feels absolutely unable to sustain any work activity."). Because the ALJ properly discounted plaintiff's credibility, *see infra* § II, the ALJ also properly considered Dr. Bert's reliance on self-reporting as a specific and

6 – OPINION AND ORDER

legitimate reason for rejecting Dr. Bert's opinion, *see Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010) (finding that an ALJ gave specific and legitimate reasons for partially rejecting a physician's opinion where the opinion was "based almost entirely on the claimant's self-reporting"); *see also Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) ("This constitutes a specific, legitimate reason for rejecting the opinion of a treating physician.").

The ALJ, having considered these reasons, properly rejected Dr. Bert's opinion to the extent that it was inconsistent with the RFC.

## II. Plaintiff's Testimony

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's headache testimony. Pl.'s Br. 14–18, ECF No. 13. In response, defendant argues that the ALJ's finding is supported by substantial evidence. Def.'s Br. 6–10, ECF No. 14.

An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 C.F.R. §§ 404.1529, 416.929. "In deciding whether to accept [this testimony], an ALJ must perform two stages of analysis: the *Cotton* analysis[3] and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). If a claimant meets the *Cotton* analysis and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). This Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citations omitted),

---

[3] "The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments could *reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1282 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1407–08 (9th Cir. 1986), *superseded by statute on other grounds as recognized in Bunnell v. Sullivan*, 912 F.2d 1149, 1154 (9th Cir. 1990)).

7 – OPINION AND ORDER

and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citations omitted).

The ALJ, having recognized plaintiff's headaches as a severe impairment under step two, concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not fully credible. Tr. 30.[4] In making this determination, the ALJ relied on four bases, including: (1) inconsistent statements regarding plaintiff's headache frequency; (2) plaintiff's course of treatment; (3) plaintiff's continued employment; and (4) inconsistent statements regarding plaintiff's activities and pain.

First, the ALJ found that the plaintiff's "alleged headache frequency is not supported by the record." Tr. 31. The ALJ noted that plaintiff reported that her headaches occurred two times a week in November 2007, tr. 331; daily in April 2010, tr. 475; daily in October 2010, tr. 532; intermittent in April 2011, tr. 491; and approximately six times a week in July 2012, tr. 78. This Court is uncertain how plaintiff could have been more consistent in reporting her symptoms during the course of her treatment. To the extent the plaintiff's reported frequency is inconsistent, that inconsistency does not amount to a "clear and convincing" reason for rejecting plaintiff's testimony.

Second, the ALJ noted that plaintiff's course of treatment was inconsistent with her alleged degree of pain. Tr. 31. In particular, the ALJ emphasized that plaintiff was not referred for additional workup and that she had declined further treatment. Tr. 31. Both reasons, if supported in the record, can support an adverse credibility finding. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a

---

[4] This Court notes that plaintiff is not contesting the ALJ's evaluation of plaintiff's testimony regarding her shoulder, back, elbows, and right wrist pain.

8 – OPINION AND ORDER

claimant's testimony regarding severity of an impairment."); *Smolen*, 80 F.3d at 1284 ("The ALJ may consider . . . unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment . . . .").

Plaintiff argues that her receipt of Torodal injections between late 2010 and 2012,[5] when considered in light of her loss of insurance and limited financial resources, preclude either reason. This Court, having reviewed plaintiff's explanations, is not persuaded. In October 2010, Dr. Bert recommended that plaintiff undergo an additional surgery, anterior cervical fusion (ACF) at C4-5. Tr. 485; *see also* tr. 545–46. At that time, Dr. Bert opined that the surgery "could probably get her functional." *Id.*; *see also* tr. 432 (Dr. Bert indicated in his medical source statement that plaintiff's restrictions would continue "[p]ermanently without recommended surgery.").[6] Plaintiff declined this recommended surgery. In March 2011, Adam Jelinek, M.D. recommended that plaintiff receive physical therapy. Tr. 560. Plaintiff received physical therapy briefly in March 2011. *See* tr. 565–71. As a result of this treatment, plaintiff's range of motion and tolerance increased. *See* tr. 570; *see also* tr. 331 (indicating that plaintiff previously experienced improvement with regard to her head and neck pain after beginning a workout program). Plaintiff subsequently discontinued treatment because of her loss of insurance and her limited financial resources. *See* tr. 565–71. Upon discharge, plaintiff was instructed to continue her home exercise program. *See* tr. 570–71. The record contains no evidence that plaintiff continued her home exercise program. To the extent that plaintiff's loss of insurance (approximately April 2011 to July 2012)[7] and limited financial resources precluded her from

---

[5] Plaintiff received Toradol injections in December 2010, March 2011, May 2011, June 2011, July 2011, October 2011, February 2012, and May 2012.

[6] Plaintiff previously underwent ACF at C5-6 and C5-7 in 2003. *See* tr. 74. As a result of that surgery, plaintiff reported a fifty percent reduction in headaches. Tr. 331.

[7] This figure is an estimate and represents the outer range of her uninsured time period.

9 – OPINION AND ORDER

pursuing recommended treatment during that time period, this rationale does not extend to plaintiff's decision-making prior to or after her loss of insurance coverage. Had plaintiff's failure to follow a prescribed course of treatment been due to a lack of coverage, this Court would expect to see a change in plaintiff's course of treatment once she regained coverage. Accordingly, the ALJ properly considered plaintiff's failure to follow a prescribed course of treatment record as a clear and convincing reason for rejecting her testimony.

Third, the ALJ noted that plaintiff continued to work with reported headaches. Tr. 31. Plaintiff's headaches, as discussed *supra* § II, occurred with consistent frequency between November 2007 and April 2011. Despite these consistent headaches, plaintiff worked as an office manager at Southwestern Oregon Community College from January 2006 until October 29, 2010. *See* tr. 236, 252, 314, 485. Plaintiff's former supervisor, Sharilyn Brown, indicated that plaintiff received "work restrictions" to accommodate her "chronic health conditions," "especially" between October 2008 and October 2010. *See* tr. 314. However, plaintiff only identified a single workplace accommodation during her previous employment:

> [P]art of my problem through all of this is I have no memory. My current memory is - - I can't remember things. I have to make lists in order to remember anything. At the end of my job when it was coming to an end, it was so difficulty because my boss was trying to make every adjustment to my position that he could to accommodate my injuries and my headaches, including actually emailing me my list of tasks for the day.

Tr. 66. To the extent that plaintiff received a memory based accommodation, the RFC articulated by the ALJ restricting plaintiff to "only simple instructions that can be learned in 30 days or less" accommodated that impairment. Plaintiff's continued employment, particularly when there was no significant change in her condition between 2007 and 2010, *see* tr. 131, can properly be considered in the ALJ's evaluation of plaintiff's statements, e.g., tr. 491. This finding, although it

10 – OPINION AND ORDER

may not independently rise to the level of "clear and convincing," does generally support the ALJ's decision to discredit plaintiff's credibility.

Fourth, the ALJ noted several inconsistencies in plaintiff's allegations that generally support the ALJ's decision to discredit her credibility. Tr. 29–31. An ALJ may use "ordinary techniques of credibility evaluation" when evaluating a claimant's testimony. *Thomas*, 278 F.3d at 960.

The ALJ noted that, in a report dated December 30, 2010, plaintiff alleged she cooked meals less often because of her pain and that her domestic partner, Mr. Evans, "does twice as much cooking [as] I do." Tr. 30, 272. In contrast, Mr. Evans indicated in his report dated December 31, 2010, that plaintiff prepares meals daily. Tr. 30, 288. Plaintiff further alleged having problems getting along with others because of her pain, tr. 30, 275, but Mr. Evans indicated that she generally gets along well with others, tr. 30, 290–91.

Moreover, the ALJ noted inconsistencies between plaintiff's subjective complaints and her examination results. Tr. 31. In February 2010, plaintiff demonstrated good motion and function in her shoulder, despite making pain complaints. Tr. 31, 474. In February 2011, plaintiff saw Marvin Kym, M.D. to evaluate her shoulder pain. Tr. 31, 563–64. Dr. Kym noted that plaintiff had full range of motion. Tr. 31, 563. One month later, plaintiff saw Dr. Bach and had "[g]ood range of motion for all joints," "[n]o muscle weakness, wasting, or pain," and was in "no apparent distress." Tr. 31, 546. Plaintiff continued to show good range of motion in "all joints" during Dr. Bach's subsequent examinations in June 2011, October 2011, and February 2012. Tr. 31, 584, 587, 590. In October 2011, plaintiff alleged "pain with all motions" of her shoulder despite having "[e]xcellent range of motion" during the actual examination. Tr. 31, 575. Plaintiff also alleged upper extremity limitations, including numbness and difficulty handling small

11 – OPINION AND ORDER

objects. Tr. 30–31, 745–52. As a result, in August 2012, neurologist Victor Lin, M.D. performed electrodiagnostic testing and a full physical examination to evaluate plaintiff's complaints of pain and numbness. Tr. 30–31, 745–52. The results of Dr. Lin's physical examination and electrodiagnostic tests were all completely normal. Tr. 31, 751–753. Dr. Lin's examination noted full strength throughout, normal sensation and normal reflexes. Tr. 751–53. While these inconsistencies may not independently rise to the level of "clear and convincing," they do generally support the ALJ's decision to discredit plaintiff's credibility.

In any event, contrary to the plaintiff's argument, the ALJ did not entirely reject plaintiff's symptom testimony. Rather, the ALJ assigned limitations to account for plaintiff's recognized headache symptoms, including: (1) avoidance of concentrated exposure to cold and noise; (2) occasional overhead reaching; and (3) a limitation to work that requires her to understand, remember and carry out only simple instructions that she can learn in thirty days or less. Tr. 28.

The ALJ, having considered all of these reasons, properly discredited plaintiff's statements to the extent that they were inconsistent with the RFC.

### III. Lay Witness Testimony

Plaintiff contends the ALJ erred in her consideration of evidence submitted by plaintiff's former supervisor, Sharilyn Brown, and plaintiff's domestic partner, Joseph Evans. *See* Pl.'s Br. 18–20, ECF No. 13. In response, defendant argues the ALJ properly considered the lay witnesses statements and accounted for their observations. Def.'s Br. 10–12, ECF No. 14.

Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless she decides to disregard such testimony, in which case she must "give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993);

12 – OPINION AND ORDER

*see also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members." (citation omitted)).

## A. Sharilyn Brown

Plaintiff's former supervisor, Sharilyn Brown, submitted a letter on plaintiff's behalf dated May 9, 2011. In that letter, Brown provided:

> During the last five years and especially during the last two years [plaintiff] had work restrictions in place to accommodate chronic health conditions.
>
> [Plaintiff] often missed work during her employment due to chronic health conditions. The frequency of missed work due to chronic health conditions was weekly during the last two years of employment with Southwestern.

Tr. 314.

The ALJ reviewed this letter and determined that it precluded plaintiff from performing her past work, which required medium exertional effort. Tr. 30 ("The fact that [plaintiff] missed work frequently is not probative of an inability to sustain work at any level. The [RFC] arrived at herein results in exclusion of this past relevant work."). Although plaintiff contends Ms. Brown's letter precluded any type of work, the ALJ's interpretation of the letter is entirely rational and must be upheld. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## B. Joseph Evans

Plaintiff's domestic partner, Joseph Evans, submitted a function report on December 31, 2010. *See* tr. 286–92. In that report, Mr. Evans described plaintiff's daily activities and functional limitations. Mr. Evans indicated that plaintiff is limited in her ability to concentrate, tr.

13 – OPINION AND ORDER

286, unable to "work on a computer for any length of time," tr. 286, unable to do repetitive activity, tr. 287, and unable to shop for long periods of time, tr. 289. Mr. Evans further noted that plaintiff takes care of her two cats and two dogs, tr. 287, prepares daily meals, tr. 288, and drives a car, tr. 289.

The ALJ, having reviewed this evidence, noted that "[m]uch of the report is generally consistent with the [plaintiff's] self-report." Tr. 30.[8] The ALJ found that the report was not consistent with disability, but was credible to the extent that it represented Mr. Evans's observations. Tr. 30. This Court agrees.

Plaintiff argues, however, that the ALJ did not account for Mr. Evans's statements that plaintiff: (1) had a limited ability to concentrate; (2) needed help with household chores; (3) needed to take breaks during activities; and (4) had a tendency to complain of more frequent headaches when under stress. Pl.'s Br. 19, ECF No. 13.[9] But these statements are not inconsistent with the plaintiff's RFC. Rather, the ALJ accounted for Mr. Evans's observations. Tr. 30. For example, the ALJ accounted for plaintiff's limitations in concentration and stress tolerance by limiting plaintiff to work involving simple instructions that she can learn in thirty days or less, tr. 28.

Nevertheless, to the extent the ALJ failed to comment upon every observation of Mr. Evans, that error is harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012). Any error is harmless if it is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). If, for example, "lay testimony does not describe any limitations not already described by the claimant, and the ALJ's well-

---

[8] In contrast to plaintiff's testimony that she could sit for ten minutes, tr. 69, Mr. Evans did not check "sitting" or "kneeling" as abilities affected by plaintiff's conditions, tr. 291.
[9] This Court notes that Mr. Evans did not identify the degree of plaintiff's limitations.

14 – OPINION AND ORDER

supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," then this Court may deem the ALJ's failure to articulate germane reasons harmless. *See Molina*, 675 F.3d at 117. Mr. Evans's description of plaintiff limitations is generally similar to plaintiff's own statements. *Compare* tr. 274, *with* tr. 288–89. Thus, to the extent that these limitations are inconsistent with the RFC, the ALJ's failure to comment upon each proffered limitation was harmless.

## CONCLUSION

Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 23rd day of March, 2015.

_____
**Michael J. McShane**
**United States District Judge**

15 – OPINION AND ORDER